UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
                                    )
       v.                           )     Criminal No.  14-cr-206 (RMC)
                                    )
**MARC VAL SINGLETON,**             )
                                    )
       **Defendant.**               )
_____ )

**ORDER IN SUPPORT OF SENTENCING**

Marc Val Singleton pled guilty to one count of Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b).  Despite a recommended sentence of 108 to 135 months under the United States Sentencing Guidelines (Offense Level 31, Criminal History Category I), the government sought a sentence of 60 months and Mr. Singleton sought a sentence of time served (approximately nine months).  This Court sentenced Mr. Singleton to 12 months and one day and writes this Opinion to explain its reasoning.

**I.   FACTS**

**A. Personal Background**

Marc Val Singleton is 35 years old.  He comes from a close and intact family now centered in California.  Mr. Singleton is the oldest of four children.  He was raised in the Mormon religion (the Church of Jesus Christ of the Latter-Day Saints).  Mr. Singleton has been married since 2000 and he and his wife have two young sons; they currently live in Salt Lake City, Utah.

Mr. Singleton worked throughout his post-secondary years to put himself through school and support his wife and growing family.  He received an Associates' degree from Utah Valley State College, a Bachelor of Science in Biological Science degree and a Master's degree

1

in Molecular Biology from California State University at Fullerton (CSU-Fullerton), and his PhD in human genetics from the University of Utah. While at CSU-Fullerton, Mr. Singleton worked on developing a genetic test for diagnostic purposes. His PhD advisor describes his work as of "exemplary quality, and centered upon development of new methods for diagnosis of genetic disease in newborn children." Presentence Investigation Report (PSR) [Dkt. 12] ¶ 70. Mr. Singleton wrote several computer programs which, in his advisor's words, "comprise an essential portion of a new genetic diagnosis pipeline being installed in the University Hospital." *Id.* Mr. Singleton and his professor have filed a patent application for his diagnostic software now called "Phevor" (Phenotype Driven Variant Ontological Re-ranking). *Id.* ¶ 74.

### B. Criminal Conduct

On June 10, 2014, a detective with the District of Columbia Metropolitan Police Department, acting in an undercover capacity (UC), entered a chat room within a social network site in which, among other things, users communicate about a sexual interest in children. At approximately 1:40 p.m., the UC met an individual, later identified as Mr. Singleton, who was in Bethesda, Maryland to deliver a presentation on his thesis topic at a professional conference. The two conducted a conversation about a shared interest in children. The Court does not discount the nature of the conversation, which twisted downwards, but feels no need to recount it further.

Mr. Singleton and the UC exchanged screen names and began to communicate on Yahoo Instant Messenger on and off during the afternoon. At approximately 7:30 p.m., Mr. Singleton took the Metro from Bethesda, Maryland into the District of Columbia to meet the UC, who had said he was sexually active with his 8-year-old daughter. Once he arrived in the District, Mr. Singleton introduced himself to the UC, who indicated that he lived in a nearby

apartment building and that his ex-wife would soon drop off his daughter.  Mr. Singleton nodded affirmatively and was then arrested.  The child did not exist and was entirely fictitious.

### C. Post-Arrest

Upon his arrest, Mr. Singleton immediately admitted that he had traveled from Maryland into D.C. with the intent to engage in illicit sexual conduct.  He answered all questions and, after he was appointed counsel, worked to provide information to the government to assist in the prosecution of his case and to assist the government in the investigation of other individuals who may be committing sexual crimes against children.

Mr. Singleton has been incarcerated in the District of Columbia since June 2014. In that time, he has become a valuable and respected instructor for other inmates at the Jail: those working to complete a GED, those trying to learn a skill, and those trying to ready themselves for re-entry into the community.  Letters from inmates he has helped were submitted to the Court before sentencing.  *See* Def. Sentencing Mem., Exhibit 5 [Dkt. 15-5].[1]  Thus, while in custody, Mr. Singleton has taught GED classes, computer learning labs, CDL courses, and job skills programs, and has participated in victim impact groups and a jail re-entry program.  PSR ¶ 60.

Raised a devout Mormon, Mr. Singleton had fallen away from that faith in his adult years.  As a result of his arrest and detention, he has turned back to the church.  Bishop Troy K. Bartholomew of the Church of Jesus Christ of the Latter-Day Saints came from Utah to meet with Mr. Singleton in the D.C. Jail and to discuss his faith and propose a program of treatment upon his return home, to which Mr. Singleton has committed.  Bishop Bartholomew provided a letter to the Court on Mr. Singleton's behalf.  *See* Supplement to Def. Sentencing

---

[1] Several of the scanned pages of Exhibit 5 were illegible; Defense counsel submitted legible copies to Chambers and the Government.  *See* Notice [Dkt. 16].

Mem., Exhibit [Dkt. 17-1] (Bishop Letter). Mr. Singleton has also worked to strengthen his relationships with his wife and parents, with whom he frequently corresponds. His family and friends are committed to supporting him upon his release. *See id.*, Exhibits 6, 7 [Dkts. 15-6; 15-7].

## II.    LEGAL STANDARD

The offense of Travel with Intent to Engage in Illicit Sexual Conduct has no mandatory minimum period of incarceration and carries a maximum sentence of 30 years of incarceration pursuant to 18 U.S.C. § 2423(b), a fine of not more than $250,000 or twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571, and a period of supervised release—after any period of incarceration—of not less than five years or life pursuant to 18 U.S.C. § 3583(k).

At sentencing, a United States District Judge must first ascertain and consider the appropriate sentencing range recommended by Sentencing Guidelines. However, the Guidelines are no longer mandatory and provide recommendations based on national experience only. *United States v. Booker*, 543 U.S. 220 (2005). To devise a sentence that is "sufficient but not greater than necessary," courts must also fully consider the sentencing factors identified in 18 U.S.C. § 3553(a). Those relevant here include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
>
> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

### III.   ANALYSIS

Through counsel, Mr. Singleton sought a sentence of time served. Counsel noted that the prosecutor and defense agreed that the Guidelines range over-represents the seriousness of this offense. (The government sought a sentence of 60 months, not 108-135.) In this regard, counsel pointed out that it was happenstance that the UC invented an eight-year-old girl instead of one twelve or older, as is the UC's customary practice on the internet; Mr. Singleton never indicated that he sought such a young child. This point is important because the difference between an eight-year-old victim and a twelve-year-old victim is a difference in Guidelines' ranges of 108 to 135 months and 36 to 46 months, or "nearly a 120% increase in the guidelines calculations." PSR ¶ 86. Indeed for these reasons, "[t]he government does not oppose the court's consideration of a downward variance related to the age of the victim given the facts and circumstances of the instant case." *See* Plea Agreement [Dkt. 7] at 3 n.1.

Defense counsel also argued that the statutory penalty for a conviction under 18 U.S.C. § 2423(b) includes no mandatory minimum period of incarceration. In addition, Mr.

Singleton entered a guilty plea to the only charged crime without a plea to a lesser charge; he has no other alleged criminal conduct that could have been withdrawn, dropped or compromised in plea negotiations.  Counsel emphasized that Mr. Singleton immediately took responsibility for his actions, extended cooperation to the government, has made tremendous efforts to rehabilitate himself and reconnect with his faith and family, and has worked to help others at the Jail.

The government's argument was measured and fair.  It recommended a variance to overcome the happenstance of the UC inventing an eight-year-old victim, without any expression of preference by Mr. Singleton for one so young.  The Assistant United States Attorney (AUSA) gave full credit to the letters in support of Mr. Singleton, his work at the Jail, and his family's testimony.  The AUSA also cited his own prosecutorial experience and advised that a support system is the most important element to successful rehabilitation for a sex offender and that it is quite evident that Mr. Singleton has family, social friends, work friends, and his church to provide that support.  Nonetheless, the government emphasized the seriousness of the crime ("in the mind of the Defendant, he was traveling to meet an eight-year-old to sexually abuse her"), the need to protect society from further criminal conduct, the need for deterrence, and the avoidance of sentencing disparities.  The government argued that this is neither an extraordinary or unique case.

The Court sentenced Mr. Singleton to 12 months and one day incarceration and 120 months (10 years) of supervised release.  The conditions imposed on the term of supervised release include registration as a sex offender, assessment and treatment as a sex offender, search and monitoring of Mr. Singleton's computers and electronics by the Probation Office, and contact restrictions with minors other than his own children.

As the Court indicated at sentencing, the crime here was very serious and society has a strong interest in protecting its children. On the other factors under 18 U.S.C. § 3553(a), however, the Court found that rehabilitation was warranted more than incarceration. Mr. Singleton quickly exhibited an extraordinary level of acceptance of responsibility. When confronted at his arrest, he immediately admitted chatting with the UC and the reasons for his travel into the District. He was immediately remorseful and told the police that he had made a huge mistake. Shortly after his arrest, Mr. Single signed a consent form permitting law enforcement to assume his identity over the internet. He gave the officers a list of his online identities and passwords to at least two accounts. He gave consent to a search of his hotel room, his computer, and his mobile phone. He talked repeatedly to law enforcement in an effort to assist in their investigations.

Mr. Singleton has no prior criminal history. There is no evidence that Mr. Singleton has ever engaged in behavior of the kind at issue here before or has ever produced, distributed or possessed child pornography. These points were important in a psychological assessment of Mr. Singleton from which Dr. Carole T. Giunta, Ph.D. submitted a forensic opinion "within a reasonable degree of psychological certainty." *See* Def. Sentencing Mem., Exhibit 1 [Dkt. 15-1] (Giunta Evaluation) at 6. The Court does not quote from this evaluation in a public document but appreciates Dr. Giunta's analysis of the prompting factors to Mr. Singleton's actions and takes her evaluation that Mr. Singleton poses a low-risk of engaging in inappropriate sexual conduct in the future seriously.

The Court received and read letters from Jail inmates, family, friends, work colleagues, and Bishop Bartholomew on Mr. Singleton's behalf. *See* Sentencing Mem., Exhibits 3, 5, 6, 7 [Dkts. 15-3; 15-5; 15-6; 15-7] and Bishop Letter. Erin Singleton, Mr. Singleton's wife,

and Raun Singleton, his father, spoke at the sentencing hearing and Raun Singleton read a letter from his wife, Mr. Singleton's mother, who could not attend. They attested to Mr. Singleton's excellent character, his willingness to help others, and his strong sense of duty to family and community. Mr. Singleton also spoke and expressed deep remorse and humiliation, thanks to his wife and family for standing by him, gratitude for his return to his faith, and commitment to change.

      Mr. Singleton's entire course of conduct since his arrest has demonstrated respect for the law; he has done everything possible to be honest, assist the government, resolve this prosecution efficiently, and help his fellow inmates in Jail. Adequate deterrence will be achieved by Mr. Singleton's experience in jail and ten years of supervised release, with stringent conditions. Along with the AUSA, the Court credits the family, friends, church and Mr. Singleton of a collective—and individual—commitment to his rehabilitation, which is the best avenue to protect the public from further crimes of the Defendant. In addition, the Court finds that Mr. Singleton will best receive the medical care recommended by Dr. Giunta during supervised release and not at the Bureau of Prisons.

      Finally, the Court agrees with Mr. Singleton that the facts and circumstances of his case are distinguishable from *United States v. Michael Gutierrez*, 14-cr-194 (JEB), so as to justify Mr. Singleton's shorter sentence. Judge Boasberg sentenced Mr. Gutierrez to thirty-three months incarceration followed by sixty months supervised release after the defendant was arrested for travelling to the District to have sex with a purported eight year-old child. Unlike Mr. Singleton, Mr. Gutierrez admitted to the undercover officer that he had had a sexual interest in children for a long time and had made prior attempts to have sexual contact with children, which were unrealized because the other participants or connecting parties backed off. Mr.

Gutierrez did not make post-offense rehabilitative and community service efforts that were comparable to Mr. Singleton's.  Lastly, no clinical psychologist provided an evaluation and opinion as to Mr. Gutierrez.  The Court finds that the notable differences between these cases justify the different sentences imposed on Mr. Singleton and Mr. Gutierrez.

## IV.  CONCLUSION

Contrary to the AUSA's argument, the Court finds that this is an extraordinary case, well outside the heartland of the Sentencing Guidelines.  For the reasons given above, the Court concludes that a long period of supervised release coupled with the strong support system and psychological treatment is a just sentence that is sufficient but not greater than necessary to fulfill the goals of sentencing.


Date: April 13, 2015

                                       /s/
                              ROSEMARY M. COLLYER
                              United States District Judge